**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| MYRTLE TRANSOU,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | ) | Case No. 2:24-cv-357-AZ |

## ***AMENDED*** **OPINION AND ORDER**

This matter is before the Court on Defendant Costco Wholesale Corporation's Motion for Summary Judgment [DE 33], filed on December 19, 2025. Plaintiff Myrtle Transou filed her response in opposition on February 1, 2026, and Defendant filed a reply on February 24, 2026. DE 39. The parties previously consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). DE 16. For the reasons outlined below, the Court **GRANTS** Defendant Costco Wholesale Corporation's Motion for Summary Judgment [DE 33].

### Background

This is an employment discrimination case in which Plaintiff Myrtle Transou claims she was discriminated against by her employer on account of her age, sex, and race. The parties agree as to most of the relevant facts of this case, but they have different interpretations of what transpired and why. The Court will summarize the facts which are not in dispute and will note the material ones that are.

Plaintiff is currently 63 years old and has worked for Defendant Costco for more than 25 years at the company's stores, commonly known as warehouses. DE 37 (Pl.'s Resp. to Def.'s Stmt. of Facts) at ¶ 4. In July 2015, Transou transferred from a warehouse located in Chicago to one located in Merrillville, Indiana. *Id.* at ¶ 5. By the beginning of 2017, Transou's position had changed from "front end manager" to "receiving manager" at the warehouse, although if it is unclear if this was a promotion or lateral move within the hierarchy. *Id.*

In July 2020, Tom Cimino transferred to the Merrillville warehouse as its general manager. *Id.* at ¶ 6. Shortly after Cimino's arrival at the store, he and Transou had a conversation about rotating to a different position and Transou said she had a preference to stay in her current role until she retired "in a couple of years." *Id.* at ¶ 7. She then rotated to the position of administrative manager where she reported to an assistant general manager who in turn reported directly to Cimino. *Id.* at ¶ 8. Things appear to have gone smoothly until December 2022 when two other employees filed a complaint against Transou relating to rude behavior and favoritism. *Id.* at ¶ 11.

The complaint was investigated by the general manager Cimino and Plaintiff admitted she had said the word "bullshit" (in her view, as a play on words relating to a co-workers bachelor of science (*i.e.*, "BS") degree, not an expletive), had invited some employees to her housewarming party, and received massages from another employee who ran a massage business on the side. *Id.* at ¶ 12. There does not appear to have been any specific finding of wrongdoing by Costco, and Plaintiff received what

appears to have amounted to a warning, a "Letter to File" reminding her of her obligation and agreement to "fully comply with the [Costco] Standard of Ethics" and that failure to do so "may result in discipline up to and including demotion or termination of [her] employment." *Id.* at ¶ 13. Plaintiff denied the allegations of favoritism or inappropriate behavior in the employee complaint at the time and continues to for purposes of this motion.

Almost a year later, in October 2023, when she was approximately 60 years old, Transou applied for an assistant general manager position at the warehouse where she worked. *Id.* at ¶ 14. Prior to applying, Transou spoke with Cimino. He told her there was "no reason" for her not to apply, but also that if he was choosing between a person who was planning to retire and a person who was not planning to retire, he would select the person not planning to retire. *Id.* at ¶ 17. The assistant general manager position required that candidates have the necessary experience, skills and certifications, including a "proof of readiness rating," which meant that a candidate had been marked as "ready" for promotion as part of their regular performance review by the employee's direct manager. *Id.* at ¶¶15-16. Transou was one of three candidates who applied for and interviewed for the assistant general manager position despite never having previously been marked "ready" in any of her performance reviews. *Id.* at ¶¶ 18, 29. At the time she applied, Transou had an associate degree and had worked at Costco for more than 20 years.

Interviews were conducted by a panel of three individuals: the general manger Cimino who worked at the same store as Transou, and two other individuals (Dan

Lavigne and Lynda Calocci) who were general managers at other warehouses in the Chicagoland area. *Id.* at ¶ 19. All three general managers were white, two were men, and their ages ranged from 55 to 75. *Id.* at ¶ 20.

After the interviews were completed in October 2023, Farooq Shariff, a 34-year old male was selected for the assistant general manager. *Id.* at ¶ 22. Shariff had worked at Costco since 2014 (or for approximately 9 years compared to Transou's 21 years), and he had obtained a bachelor degree and two professional certifications while working part time. *Id.* at ¶ 23. He had been marked "ready" for promotion at the time of the interviews. Furthermore, in interview notes, Transou was noted to have not provided specific answers to certain questions posed to her, including her contributions to the warehouse. Shariff was viewed more favorably and more prepared in his interview, including specific contributions to the warehouse, including improving the standing of the warehouse's optical department (where Shariff had worked as department manager) and participating in payroll, audits, budgets and hiring as an administrative manager. *Id.* at ¶¶ 23-25.

Three months later, in February 2024, Transou remained a Costco employee and assisted with the hiring of a "sales auditor" position. *Id.* at ¶ 37. As part of the interview process for that position, two candidates were required to take an assessment test which Transou oversaw. *Id.* One of the applicants, Jennifer Estrada took the 30-minute assessment test when she had only 26 minutes left on her shift. During the test, Estrada informed Transou that her shift was ending and she needed to clock out. Transou had Estrada finish taking the test while Transou used Estrada's

badge to clock her out—resulting in Estrada completing the test "off the clock" for approximately 4 minutes. *Id.* at ¶ 40. Estrada, who was not selected for the sales auditor position, later complained to management about Transou clocking her out and an investigation ensued. *Id.* at ¶ 41. As part of the investigation by general manager Cimino, Transou confirmed that she had clocked Estrada out but stated she did it in the presence of Estrada and as a favor for her while completed the test. *Id.* at ¶¶ 42-43. And while clocking out another employee is grounds for termination under Costco policy, Transou instead received a "counseling notice" and suspension. *Id*. at ¶¶ 46-48. On March 8, Cimino requested approval to demote Transou to an hourly cashier position. *Id.* at ¶ 49. On March 11, the demotion was approved, and on March 20, Transou was notified of her demotion.

That timeline of events coincided with Transou filing her first charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Specifically, on March 11, the same day that Cimino received approval to demote her, Transou filed her charge of age discrimination relating to Costco's failure to select her for the assistant general manager position. *Id.* at ¶ 52. Costco was made aware of the filing of the charge via email the following day on March 12, or the day after he received approval to demote her, but eight days before Transou was actually demoted. *Id.* at ¶¶ 53-54. Approximately one month later, on April 18, 2024, Transou filed a second charge of discrimination with the EEOC, claiming that she was suspended and demoted because of her age, race, and sex and in retaliation for the filing of her first EEOC charge. *Id.* at ¶ 56.

Finally, as part of her response to Costco's Statement of Undisputed Facts, Transou has included additional facts which she claims support her case. The Court does not recount them all here, as many of them are legal conclusions supported by nothing other than Transou's personal opinions. It also includes supposed complaints Transou made about Cimino which she says were not properly investigated by Costco or kept confidential. *See* DE 37 (Pl.'s Additional Statement of Facts) at ¶¶ 62-63, 65, 78-80, 83. But Plaintiff does not provide much context for these beyond her own generalized testimony and it is unclear when these supposed complaints, investigations and retaliation took place. Thus, many if not most of them are immaterial to the issues before the Court.

## Discussion

### I. Legal Standard

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must construe all facts in the light most favorable to and draw all reasonable inferences in favor of the non-moving party, *Murphy v. Caterpillar*, 140 F.4th 900, 905-06 (7th Cir. 2025), but the moving party can prevail "by showing an absence of evidence to support" the non-moving party's claims. *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020). In that vein, viewing the facts in the light most favorable to Plaintiff does not mean the Court's inquiry is into the sincerity of Transou's belief that she was discriminated and retaliated against for unlawful reasons. That is not the Court's role at summary

judgment. Even the most sincere belief, without evidence, is insufficient to overcome a motion for summary judgment. Plaintiff's claims are for sex, race, and age discrimination. She claims that Costco failed to promote her for because of her age and retaliated against her based on her age, sex and race when it suspended and demoted her after she complained of discrimination. DE 1 (Pl.'s Compl.) at ¶¶ 12-13, 15.

Title VII prohibits employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The Age Discrimination in Employment Act ("ADEA") further prohibits discrimination against workers aged 40 years or older. 29 U.S.C. § 623(a)(1). "To succeed on a Title VII discrimination claim, an employee must prove (1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation." *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)). Race and sex discrimination claims under Title VII simply require that race or sex be a "motivating factor in the defendant's challenged employment decision." *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020)). An age discrimination claim, on the other hand, requires an employee to prove that age was the "but for" cause of the adverse employment action, a more stringent causation showing than "motivating factor." *Tyburski*, 964 F.3d at 598. Transou's Section 1981 claim likewise requires that she "prove that, but for race, [she] would not have suffered the loss of a legal protected right." *Comcast Corp.*, 589 U.S. at 341. "These inquiries are similar; the key

difference is that Title VII protects against mixed-motive discrimination, but the ADEA [and Section 1981] does not." *Vassileva v. City of Chicago*, 118 F.4th 869, 873 (7th Cir. 2024) (citations omitted).

Under either type of discrimination claim, a plaintiff can proceed by using either (or a combination of) direct or circumstantial evidence that she suffered an adverse employment action because of her sex, race or age. *See Carson v. Lake County*, 865 F.3d 526, 532–33 (7th Cir. 2017). Generally speaking, there are "three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll*, 953 F.3d at 929 (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994))

"A plaintiff may also proceed through the burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Murphy*, 140 F.4th at 911; *see also Carson*, 865 F.3d at 533 (explaining that these are alternative routes). *McDonnell Douglas* is a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013) (explaining that "the original purpose of *McDonnell Douglas* ... was to outline a series of steps that, if satisfied, would support a plaintiff's right to reach the trier of fact"). To make out a prima facie case of discrimination under the *McDonnell Douglas*

burden-shifting framework, Transou must demonstrate (1) she was a member of a protected class (here, a Black woman over the age of forty); (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; (4) similarly situated employees outside the class (*e.g.*, younger, non-Black, or male employees) were treated more favorably. *Murphy*, 140 F.4th at 911 (citing *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771–72 (7th Cir. 2002). If the prima facie case is made, the burden shifts to Costco to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). "From evidence of pretext, a trier of fact may, but is not required to, infer the employer acted with an unlawful motive." *Murphy*, 140 F4th at 911 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, (1993)).

"Regardless of the plaintiff's chosen method(s), at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action because of his age." *Murphy*, 140 F.4th at 912; *David*, 846 F.3d at 224. ("In adjudicating a summary judgment motion, the question remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?") (citation omitted). It does not matter which path a plaintiff takes to make their case, the legal standard is "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age, sex or race] caused the discharge or other adverse employment

action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("Evidence must be considered as a whole…") (rejecting the approach of sorting direct evidence from indirect evidence).

## II. Plaintiff's ADEA Claim and "But For" Causation

Before addressing the specific claims, the Court must address Costco's first argument which permeates much of its briefing and clarify what but-for causation means in the context of employment discrimination lawsuits. Costco's argument is that because Plaintiff alleges "multiple motives to Costco's decision[s]," she cannot, as a matter of law, succeed on any part of her ADEA or Section 1981 claim. DE 34 (Def.'s Br.) at 6-7. This argument is without merit and can quickly be set aside.

Despite the prominence of this argument in its papers, Costco fails to cite any case which actually holds that "but for causation" in the context of ADEA or Section 1981 requires that age be the exclusive or sole cause of an adverse event. That is probably because such an argument has been described as "not just wrong, but incoherent." *Knapp v. Evgeros, Inc.* 205 F. Supp. 3d 946, 959 (N.D. Ill. 2016). More legally speaking, Costco's argument extends the Supreme Court's holding in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2000) much too far. The district court in *Knapp* rejected the same argument that *Gross* holds "that the plaintiff's age must be *the only* but-for cause of the adverse employment action." 205 F. Supp. 3d at 959 (italics in original). As the court explained, if such an argument were true, then every ADEA claim would fail because "[e]very event (or, at least, every event that is relevant to the ADEA) has multiple but-for causes." *Id.* "A plaintiff's hiring is a but-for cause of

her firing; if she had never been hired, she would never have been fired. So is her having been born…and so on." *Id.* And while Seventh Circuit has not directly addressed the issue, *Knapp* cited multiple circuit court decisions in accord, and Costco presents no reason to think the Seventh Circuit would hold differently. *Id.* at 959 (citing *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 352 (5th Cir. 2014) and *Jones v. Okla. City. Pub. Schs.*, 617 F.3d 78 (10th Cir. 2010)). As such, the Court will not view "but for" causation for Transou's ADEA claim through the artificially narrow lens that Costco advocates for. Instead, it will view but-for causation as that term is generally understood, which means something more than a "contributing factor." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011).

## III. Discrimination Claim Relating to Plaintiff's Alleged Failure to Promote

Costco next argues that Transou's claim that she was not promoted to the assistant general manager role because of her age is not supported by any direct evidence and that she cannot make out a prima facie case under the *McDonnell Douglas* framework. Again, under that system of organizing proof, "the plaintiff has the initial burden of establishing that '(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer.'" *David,* 846 F.3d at 225. "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the

burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.*

First, Costco argues that Transou was not qualified for the assistant general manager position because she had not been marked as "ready" for a promotion in her annual performance reviews. DE 34 at 8. But Transou convincingly argues that she was marked as not "ready" solely because she was unwilling to travel or relocate to a different store. She further points out that Cimino testified that as the general manager, he had discretion to waive the requirement that an employee be marked "ready" prior to receiving a promotion. And there is nothing else in the record which shows Transou was categorically unqualified for the position, especially given that she was actually interviewed for and considered for the position. Given that the Court must construe the facts in Transou's favor, it finds Costco has failed to carry its burden to show that Transou was unqualified or failed to meet its legitimate expectations.

Costco next argues that Transou fails the fourth prong of making out a prima facie case and says she cannot show that the person who was selected for the assistant general manager position was less qualified than her. This is a more difficult prong to assess given the obvious subjective nature of the inquiry over who is more or less qualified.

On the one hand, Plaintiff had more experience, including management experience, at Costco than Shariff. But Shariff held a bachelor degree, where Transou only held an associate degree. This is a bit of a wash, but construing the facts in

Transou's favor, she has made out a plausible and prima facie case, and what really matters for purposes of the analysis is whether it can be said the employer's explanation for the decision were merely pretextual. *See Vassileva*, 118 F.4th at 874 ("Where a defendant offers a nondiscriminatory explanation for its employment decision, as here, the prima facie case and pretext inquiries often overlap, so courts may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext.") (cleaned up).

So the Court now looks at Costco's proffered reasons for its decision to promote another individual. Here, Costco offers several reasons why Shariff was selected over Transou. First, there is nothing in the record indicating that Shariff was categorically unqualified compared to Transou. He had worked at Costco in various roles for a decade, during which he obtained a bachelor degree and other professional certifications. DE 37 at ¶¶ 23-27. Second, Shariff had been marked "ready" in his performance reviews prior to applying for the position. *Id.* at ¶ 31. Third, the notes maintained by the interviewing panel showed Shariff's answers were viewed more favorably by the panel than Transou's answers. Each and all of these qualifies as a legitimate non-discriminatory reason for Costco's promotion decision.

Now the burden shifts back to Transou to show that Costco's proffered reasons were pretextual. This is a hurdle that Transou fails to clear. Simply put, there is no evidence of pretext in Costco's decision making. "Pretext is defined as 'a dishonest explanation, a lie rather than an oddity or an error.'" *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015) (quoting *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319,

326 (7th Cir. 2002)). Transou has not produced any evidence suggesting Shariff's qualifications were anything but what Costco says they were. Nor are there shifting or changing explanations for the decision which are frequently a hallmark of pretext. *Murphy*, 140 F.4th at 915 ("We have long held that an employer's shifting and inconsistent explanations for an adverse employment action can support an inference of pretext.") (citations omitted); *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003) ("One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision.")."To show pretext, a plaintiff 'must do more than simply allege that an employer's stated reasons are inaccurate; [she] must still have some circumstances to support an inference that there was an improper motivation proscribed by law.' " *Vassileva*, 118 F.4th at 874 (quoting *Tyburski*, 964 F.3d at 599). Transou's subjective belief that her years of experience at Costco should have counted for more and that she was more qualified are therefore not enough. *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir. 1998) (affirming summary judgment for employer even though employee had more seniority than another candidate). *See also Glab v. California State Bd. of Equalization*, 151 F.3d 1032 (Table), at *4 (7th Cir. 1998) ("Years of service is not necessarily determinative of an individual's qualification for a promotion, particularly in this case where the Board concluded that Bolda gave superior responses at the interview and had a better reputation."); *Krchnavy v. Limagrain Genetics Corp.,* 294 F.3d 871, 878 (7th Cir. 2022) ("Although it is certainly arguable

that [plaintiff] was well-qualified for [the open] position, this line of reasoning is not relevant to the underlying issue of pretext.").

Having failed to make out a case under the *McDonnell Douglas* framework, the Court looks to any other remaining evidence which may answer the ultimate question as to "whether a reasonable jury could find that the plaintiff suffered an adverse action because of [her] age." *Murphy*, 140 F.4t at 912. This brings the Court to what is probably Transou's strongest evidence in support of her ADEA claim: a comment made by Cimono when Transou first expressed interest in applying for the assistant general manager position. Transou testified that shortly after the assistant general manager position was posted, she spoke to Cimino about applying for the job. During their conversation, while Cimino told Transou that there was no reason for her not to apply, but that "if he had to choose between a person that's planning to retire and a person that's not, he would choose the one that's not planning to retire." DE 37 at ¶ 17. The parties are in hot dispute as to the significance of this singular comment by Cimino and whether it is sufficient to allow Transou's age discrimination claim to be presented to a jury.

On the one hand, evidence of retirement inquiries is not categorically evidence of age discrimination. The Supreme Court rejected that argument squarely in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). "A company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct." *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992); *see also Pitasi v. Gartner Grp., Inc.*, 184 F.3d 709,

715 (7th Cir. 1999) (employer's "suggestion of retirement would not alone give rise to an inference of discrimination"). That is in line with the broader notion that "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Merillat*, 470 F.3d at 694. The comment about Transou's anticipated retirement in the near future was not the only time the issue had ever come up. As Transou herself testified, she would casually discuss retirement with Cimino at work and had told him years before that she had an intention of retiring in her current position. *See* DE 37 at ¶ 72. Thus, Cimino's comment could very logically just be seen as a continuation of their prior discussions and an acknowledgment of what Transou had previously told him, not evidence of age discrimination.

On the other hand, even "stray remarks" can provide the inference of discrimination when the remarks were made by the decisionmaker, around the time of the decision, and in reference to the employment action. *See Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013); *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 605 (7th Cir. 2012) ("[I]solated comments are not probative of discrimination unless they are contemporaneous with the discharge or causally related to the discharge decision-making process."). Here the comment was made by Cimino, the warehouse's general manager who while not the sole decisionmaker, was unquestionably part of the decision making (and logically could have had greater influence over hiring decisions at the store he managed compared to the general managers of other stores in the area who made up the rest of the panel). Second, the

comment came in the context of Transou expressing interest in applying for the assistant general manager position. When viewed in the light most favorable to Transou at summary judgment, that supplies some plausible causal connection between the comment and ultimate outcome. Third, the comment seemingly came within a few weeks of the adverse employment action, *i.e.*, Transou not getting the job.

That is closer in time than the cases cited by Costco, such as ten months being too far removed to create sufficient causality that a reasonable jury could find in favor of the plaintiff. *Fleishman*, 698 F.3d at 605 ("This comment is not contemporaneous because it came ten months before [plaintiff's] termination."). Same for five months. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 724 (7th Cir. 1998). Or two months. *See Markel v. Bd. of Regents of Univ. of Wis. Sys.,* 276 F.3d 906, 910–11 (7th Cir. 2002).

The Court must choose which line of cases is more applicable to the instant situation. In the end, even if said by the general manager as part of the promotion application process for the position Transou ultimate did not get, holding that the mere mention of Transou's anticipated retirement and that it would be a reason that she might not be selected for the position lacks an obviously impermissible motive or connotation. So it really does not matter when the comment was made or who said it. In other words, that singular comment—standing alone as is the case here because Transou has not introduced other evidence—would be insufficient for a reasonable

jury to conclude Costco discriminated against Transou based on age when it did not select her for the assistant general manager position.

Accordingly, Costco's motion for summary judgment on Transou's ADEA claim for failure to promote her to the assistant general manager position will be granted.

**IV. Plaintiff's Retaliatory Suspension and Demotion Claim**

"The ADEA and Title VII also prohibit an employer from retaliating against an employee because she complained of discrimination." *Vassileva*, 118 F.4th at 874 (citing 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a)). On these aspects of her case, Plaintiff asserts Costco retaliated because of her age, race, sex, and in retaliation for filing an EEOC charge. "A retaliation claim under Title VII requires enough evidence to permit a reasonable jury to find that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and that adverse employment action." *Gnutek v. Illinois Gaming Bd.*, 80 F.4th 820, 824 (7th Cir. 2023) (citing *Rozumalski v. W.F. Baird & Assoc., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019)). ADEA retaliation claims have nearly identical elements. *See Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 657 (7th Cir. 2012). Both the ADEA and Title VII require but-for causation in the retaliation context. *Gnutek*, 80 F.4th at 824. But again, that does not mean sole cause, and "[i]f an adverse employment action is the result of two different causes—one prohibited by Title VII and the other permissible—then summary judgment should not be granted to an employer." *Xiong v. Bd. of Regents of Univ. of Wisconsin Sys.*, 62 F.4th 350, 355 (7th Cir. 2023). "The key question" in a retaliation claim "is whether a

reasonable juror could conclude that there was a causal link between the [employee's] protected activity ... and the adverse action.'" *Rozumalski*, 937 F.3d at 924.

The only element of Transou's claim in dispute here is whether there was a causal connection between the filing of the EEOC charge and Costco's decision to demote her. Costco convincingly argues that it had no notice or knowledge of Plaintiff's first EEOC charge when it made the decision to suspend and then demote her to cashier in the wake of an employee complaining about Transou clocking her out early in contravention of company policy. DE 34 at 22 (citing DE 37 at ¶ 54). This timing undercuts any notion of retaliation and the policy violation provides a legitimate non-discriminatory reason for Costco's demotion decision.

Cimono received approval to demote Transou on March 11, 2024, the same day Transou filed her EEOC charge relating to Costco's failure to promote her to AGM. DE 37 at ¶¶ 49-50, 52. Costco received notice of Transou's EEOC charge, the following day March 12, 2024. SOF 54. Even though Transou was not actually demoted until March 20, 2024, or eight days after Costco was notified of the EEOC charge, *id.* at ¶ 52, "temporal proximity between an employee's protected activity (e.g., filing an EEOC charge) and an adverse employment action rarely suffices alone to support an inference of a retaliatory motive." *Vassileva*, 118 F.4th at 875 (citing *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022)).[1] And here, the temporal proximity

[1] Transou also originally claimed that Cimino's decision to not let Transou attend an off-site manager meeting in February 2024 was retaliatory. But that unquestionably occurred prior to Transou's first EEOC charge, *see* DE 37 at ¶ 58, and thus it cannot be said to have been in retaliation for any protected activity as a matter of law and logic.

does not support an inference of causation because by the time Costco was informed of the EEOC charge, the decision to demote had already been made.

Costco furthermore has pointed to evidence of non-discriminatory reasons why Transou was suspended and demoted, namely Costco's investigation and determination that she violated Costco's policy on clocking out other employees with regard to Estrada.

In response, Transou concedes that she violated the policy but says she once witnessed a white female manager clock sick employees out and she was not similarly reprimanded. *See* DE 37 at ¶ 42. Costco responds that the other manager is not a proper comparator because she and Transou were in different levels of management and the other manager reported to someone at Transou's level. Transou makes a fair point that the policy does not distinguish between positions and levels of management. But more importantly, the circumstances of the two incidents differ materially. The other manager reportedly clocked out employees who were sick and leaving for the day. Transou, on the other hand, clocked someone out prematurely while that employee should have still been on the clock, presumably to avoid incurring overtime. Because Transou's decision affected that employee adversely, she filed a complaint against Transou. No complaint was filed against the other manager and it is not clear that the incident was ever reported. Taking these facts and circumstances into account, the Court agrees that Transou has failed to sufficiently demonstrate that the other manager in question was similarly-situated to her. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (to demonstrate that two

employees are similarly situated for comparator analysis plaintiff must show they "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them").

Transou contends that Costco's enforcement of what she deems a minor infraction of the policy was unreasonable. In other words, she believes the punishment does not fit the crime. But the Court's role in employment discrimination cases is not to "sit as a super personnel department to review an employer's business decision." *Ritter v. Hill 'N Dale,* 231 F.3d 1039, 1044 (7th Cir. 2000). There must be wiggle room for legitimate discretion in making important decisions relating to hiring, firing and promotions. The law does not prohibit mistakes or even poor judgment, it prohibits unlawful discrimination and unlawful retaliation. There's no doubt Transou genuinely believes that that her demotion was unnecessarily harsh. But it was not irrational or so lacking in reason to be deemed illegitimate or pretext. The policy is obviously designed to prevent violations of state and federal wage and hour laws, which are strictly enforced. And although Costco could have fired Transou, it took less drastic action. All in all, the facts in the record are insufficient evidence to overcome Costco's showing of legitimacy and therefore Transou cannot be allowed to present her claim to a jury.

Finally, the circumstantial evidence of Transou's own testimony that in her opinion, Cimino "dislikes female managers and treats them differently," DE 37 ¶ 74, and statements that he treated her differently in retaliation against her, *id.* at ¶ 92,

cannot as a matter of law preclude summary judgment in Costco's favor on her retaliation claim. *See Vasquez v. Caterpillar Logistics, Inc.*, 2017 WL 4773081, at *11 (N.D. Ind. Oct. 20, 2017), *aff'd,* 742 F. App'x 141 (7th Cir. 2018) (employee's own statements that reasons for adverse employment action were "false or that the reasons for his discharge were pretextual" insufficient to overcome summary judgment). The same is true for Transou's testimony that another Costco executive "refused to speak" with her "about her age-related complaints after she filed her EEOC charge." DE 37 at ¶ 94. This evidence is too thin to entitle Transou to present her retaliation claim to a jury. The Court "will not draw inferences that are supported by only speculation." *In re Greenpoint Tactical Income Fund LLC*, 168 F.4th 1002, 1008 (7th Cir. 2026).

## Conclusion

For the reasons discussed, the Court **GRANTS** Defendant Costco Wholesale Corporation's Motion for Summary Judgment [DE 33]. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff and to close this case.

So ORDERED this 6th day of October 2026.

*/s/ Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT